### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

## AT COLUMBUS,

### JANUARY TERM, 1855.

Present—JOSEPH H. LUMPKIN, }
EBENEZER STARNES, } *Judges.*
HENRY L. BENNING, }

---

No. 1.—DOZIER THORNTON and others, plaintiffs in error, *vs.*
DANIEL HIGHTOWER, defendant in error.

[1.] At May Term, 1852, an order was granted by the Judge of the Superior Court of Muscogee County, allowing T to amend his bill in Equity, then pending in Court; which order required the defendants to appear and answer said amendment, on or before the first day of the next term, with the liberty of pleading or demurring, or doing both. The next term commenced session on the first Monday in November. Neither plea, nor demurrer, nor answer to the bill, as amended, was then filed; but on the 22d day of December, (the Court being until that time in session,) when the complainant was about moving in the cause, the defendants proposed to dismiss the order granted at May Term, 1852, on various grounds, alleging irregularity and insufficiency in Law: *Held,* that these objections came too late; that they should have been presented, if at all, at the commencement of the term, when the defendants were called on to plead, answer or demur, &c., and that any other practice would allow unfair advantages to be taken, and might be productive of improper delays.

[2.] After such delay, it was proper for the Court to over-rule a motion by the defendants, made on said 22d of December, to be allowed to demur, plead and answer to said bill, as amended, *instanter.*

[3.] In some cases, a complainant may proceed against a portion of many defendants of equal liability; as where the parties liable are very numerous, and where those sued may bear their proportion of the loss, as well as if

VOL. XVII 1

Thornton *et al. vs.* Hightower.

all interested were before the Court, and suffer no injustice thereby—there a bill may be filed against a portion of them, to compel payment of their aliquot shares.

[4.] Though defendants to a bill in Equity be in fault in not filing answer in time, and the Court is proceeding to take the bill *pro confesso* against them; yet, if there be then excuses offered to purge the default or contempt, and which present a reasonable ground of indulgence, (unless the delay has been extravagantly long,) the Chancellor should allow the answers to come in upon such terms as he may deem it his duty to prescribe—requiring to see the answers proposed to be put in, in order that he may judge of their propriety, and not putting the complainant to the peril of just such an answer as at that late moment the defendants may think proper to submit.

In Equity, in Muscogee Superior Court. Decision by Judge. IVERSON, at November Term, 1852.

At the May Term, 1852, the following order was granted in this cause :

DANIEL HIGHTOWER
   *vs.*    } *Bill &c.*
DOZIER THORNTON, *et al.* }

The Court having, at May Term, 1851, granted an order allowing the complainants to make certain amendments to said bill, and directed the manner in which service of the same should be perfected on the defendants to said bill, who had not appeared and answered the same, and the Court being now of the opinion that so much of the said order as directed the mode of said service on said defendants was improvidentially granted : It is here, now, ordered, that that portion of said order, in regard to the manner of serving said defendants, be re-called and set aside. And the said complainant being desirous of withdrawing his waiver of the answer of certain defendants, as expressed in said order : *It is hereby ordered,* that said complainant withdraws his said waiver; that all the defendants to said bill, or their Counsel, be served with a copy of all the amendments made to said bill, and a copy of this order, sixty days before the next term of this Court, if to be found in this State; if not, by a publication, once a week, in one of the

Thornton *et al. vs.* Hightower.

public Gazettes in the City of Columbus, for two months before the next term of this Court, to wit: Daniel Hightower *vs.* Dozier Thornton and others, (the names of those to be served to be inserted.) Bill, &c., in Muscogee Superior Court, to compel the defendants, as stockholders of the Planters' & Mechanics' Bank of Columbus, to pay up the unpaid stock in their hands: *It is ordered,* that the said defendants appear and answer said bill, on or before the first day of the next term of this Court, with the liberty of pleading or demurring thereto, or both, if they think proper. *It is farther ordered,* that all the defendants to said bill appear and answer said amendments, on or before the first day of the next term of this Court, with the liberty also of pleading or demurring, or of doing both, to the same, at the time aforesaid."

Counsel for defendants were in Court when this order was passed, and resisted the passing thereof.

At November Term, 1852, Counsel for defendants moved the Court to set aside these orders, as improvidently granted, on the following grounds:

1st. Said orders are uncertain and insufficient, as to the names of the defendants to said bill.

2d. Because two of the defendants to said bill were, at the time of the passing of said order, dead, to-wit: David P. Hillhouse and Abraham Key, and their representatives, at that time, had not been made parties.

3d. Because the defendants are given no day in Court, in which to demur, alone, to said amendment.

4th. Because said order for service of said amendment, by publication, is erroneous and contrary to the Statute in relation to the service of amendments.

5th. Because said orders are improperly granted in this, that at the time of the granting of said orders and each of them, said complainant had not, in truth and in fact, amended his bill, and had not filed any amendments in said cause, making said A. B. Ragan, the assignee of said Planters' and Mechanics' Bank of Columbus, a party defendant to said bill.

6th. Because, if the complainant had made such amendment, the same was irregular and illegal, inasmuch as defendants had answered said original bill, before such amendment; and the same being founded on matters and things accruing after the filing of said original bill, as is shown by said amendment— the same could be engrafted on said bill, only by a supplemental bill.

7th. Because the orders are irregular, insufficient and improvident, as appears by an inspection thereof.

The Court refused the motion of defendants' Counsel, and exceptions were filed thereto.

Defendants then asked leave to demur, plead and answer to the bill, as amended, confining themselves, in the demurrer, to the amendment alone; on the ground that the same could be allowed only on supplemental bill. And to plead—(the pleas being already filed)—

1st. That Robert B. Alexander was the proper party complainant; that Ragan was improperly made a party defendant, and divers other things, which appear in said pleas, and Ann E. McDougald pleading also the several other pleas, and *plaen administravit praeter, &c.*

2d. That there were numerous stockholders of said bank, owning numerous shares of said bank, solvent and within the jurisdiction of the Court, of equal liability with these defendants, whatever their liability may be per share, not made defendants to the bill, and which complainants could have made, and can make defendants to said bill, and who are material and necessary parties defendants to said bill.

And for answers, the defendants offered, fully, to answer the amendments *instanter;* and in fact, some of the defendants had filed their answers in the Clerk's office, but without permission of the Court. The Court refused to allow the defendants as curing their default thus to demur, or demur and plead, or demur and answer, because the defendants were in default in not filing the same on or before the first day of the term, as by said order required, and had not so filed them until the case

Thornton *et al. vs.* Hightower.

was called in its order for hearing.    To which ruling of the Court, said defendants, by their Counsel, excepted.

The Court then directed the complainant Solicitor to take the order *pro confesso*, as to the amendments to said bill.    The complainant Solicitor insisting upon his right to take the whole bill as amended as confessed, the Court granted time until the next morning, for him to produce authority sustaining said motion; and on the following morning, at the opening of Court, the complainant's Solicitor was called upon by the Court to proceed with the reading of the authorities, when the Solicitors for defendants arose and appealed to the discretion of the Court, to allow them reasonable and further time in which to file their answers and pleas, or answers alone, by enlarging the order of the May Term, 1852, in that regard, and offered to the Court, in excuse for their default, and as purging them from all contempt—

The statement of Col. H. Holt, who stated that he was original leading Counsel for a large portion of said defendants, and on whom had devolved the principal preparation of the defence, from the commencement of the case; that it was not and had not been his purpose, or those he represented, to delay the case; that since the first week in August last, until the last week of the present term of this Court, he had been sick, and had not been able, and had not prepared this or his numerous other cases in this Court; while he would not say that these particular cases had not been neglected, by reason of his indisposition, he would say that these and all his other cases had been neglected; and he regretted to add, that his clients had suffered most materially.

B. Hill, Esq. also of Counsel for two of the defendants, to-wit: Alexander J. Robinson and Dozier Thornton, stated, that although thus employed, Col. Holt was employed for the same defendants; yet, he, Hill, was not expected to aid in the preparation of these cases in vacation, as he was necessarily absent; that when he first came to the Court, during the present session or term, he had been informed, by those on whose information he relied, that complainant's Solicitor had, the week

before his arrival, announced that he should not take any steps in these Equity bank cases, further than to make parties therein, as to the representative of deceased defendants, which had proved true of one of the cases—that of Carey, assignee, *vs.* Hoxey, but not so of these cases ; that when, at the last term, the order was taken in this case, he was fully of the opinion and belief that said order allowed a demurrer alone, at this term of the Court; and consequently, further time to plead and answer, especially as on motion of defendants, at the time said order was passed, "not demurring alone" were, by the Court, stricken from said order, and he had informed his clients of his, said Hill's, understanding of the legal effect of said order.

. Alexander J. Robinson, in person, testified that he had applied to Judge Sturgis, one of his original Counsel, as to the preparation of his defence in vacation, who informed him that nothing was necessary to be done in vacation; and hearing of the sickness of Col. Holt, his other resident Counsel, whose sickness was known to him, and the absence of Judge Sturgis at Washington, he had not employed other Counsel to prepare his defence.

Henry J. Devon, Counsel for Ann E. McDougald, administratrix of Daniel McDougald, deceased, (as was also Col. Holt Counsel for her) stated, in his place, that he endeavored to obtain the papers in this and other cases, in vacation, in which Mrs. McDougald was a party, in order to see to the preparation of her defence before the present term of the Court; that he applied to the Clerk for all the papers in which she was a party, who informed him that said papers were not in office, but were in the possession of complainant's Solicitor; he then applied, several times, to Mr. Stokes, the co-partner of Mr. Dougherty, who informed him that Mr. D. was absent, and that he could get none of the papers until Mr. Dougherty returned; and that he was unable to procure them until during the present term of this Court.

Martin J. Crawford, Esq. for himself, as defendant, stated hat in September last, Mr. Stokes had called on him and

asked him to acknowledge service on the amendment, the order being absent, stating to him that it was only an old amendment, granted several terms ago, and a copy of which he, defendant, already had—and asked defendant to accept service and waive being served with a copy; and defendant did so, and never knew the contents of said order, as to the peremptory requisition of the same, to answer said bill on or before the first day of this term; nor was he informed, by any one, about it, until within the last three days; so soon as he was informed, he promptly answered said amendment and filed said answer in the Clerk's office, but without leave of said Court to do so.

Defendants further proposed to answer said bill, in such manner and within such time as to cause no delay to complainants; that said complainant might, so far as defendants were concerned, set said cause down for trial at the next term of said Court, if he was, as to said amendment, and in reference to other defendants, (not served with it,) in a condition to do so; and because, in fact, it would not delay complainant, as he had parties, to-wit: the representatives of Key and Hillhouse, not served with said amendment; and the rule for time, to perfect service of said amendments, would have to be enlarged, as to those defendants.

After considering said motion, said Court refused the same as to each and all of said defendants, and to which decisions of said Court, refusing said motion, said defendants, by their Counsel, then and there excepted.

Complainant had, previously to the above stated motion of defendants, moved to take said bill as amended, *pro confesso,* as to the said defendants, served with a copy of said amendment, under said order of May Term, 1852, and now insisted on the granting of said motion by the Court; and as preliminary thereto, was called upon to prove service thereof, and for the purpose, produced a copy of said amendment, and a certified copy of said order of May Term, 1852, thereto attached, and with this entry thereon:

" STATE OF GEORGIA—COUNTY OF RANDOLPH :

Served the defendant, personally, with a copy of the within original.

*September* 5, 1852.

(Signed)      WASHINGTON JOYCE, Sheriff."

And claimed the entry of said Sheriff on said amendment and copy order, as evidence of service thereof, on William Taylor, one of said defendants; to which defendant's Counsel objected, as insufficient evidence of that fact, which objection the Court over-ruled; to which ruling of the Court the defendants, by their Counsel, excepted. Complainant then exhibited a copy of said amendment, with the Clerk's certified copies of the orders thereto attached, on which was an acknowledgment of service, signed Martin J. Crawford, for himself and co-executors; and defendants objected that this was not sufficient service as to said co-executors, as said Crawford did not, in such acknowledgment, show himself to be the Solicitor of said co-executors, which objection the Court over-ruled. To which ruling the defendants excepted.

The complainant then introduced several copies of the Columbus *Enquirer*, a newspaper published weekly in the City of Columbus, in said county of Muscogee—showed by said papers that a copy of the said order, with the name of Daniel Hightower, complainant, *vs.* Dozier Thornton, James M. Foster and James Slayton and others were stated as defendants; and if the defendants, except Thornton, were included therein, it was in the designation "and others," and not by their several names. Complainant proved, by said paper, that a copy of said order, with defendants named therein, as aforesaid, had been published once a week for two months, to-wit: in a paper issued on the 7th day of September, 1852, and in one issue on the 2d November, 1852, and in each weekly issue between that time, and relied on said publication as evidence that Foster Slayton and Greenwood had been legally and sufficiently served with said amendments. Defendants' Counsel objected to the sufficiency of said service, and to the sufficiency of the

Thornton *et al. vs.* Hightower.

evidence thereof, upon the ground that the names of said defendants were not sufficiently named in said caption, and because said publication had only been made two months, which objections were over-ruled by the Court.    To which ruling and decisions, the defendants, by their Counsel, excepted.

Defendants showed for cause why complainant's Counsel should not take the bills as amended, *pro confesso,* as to the defendants, (other than the representatives of Key and Hillhouse, not served, and as against whom complainant did not ask said order,) in addition to the foregoing reasons, already stated, the following :

1st.  Because Key & Hillhouse were then dead, (and it was then and there admitted by complainant's Counsel, that Hillhouse had been dead two and a half years, and Key one and a half years,) and that the representatives of Key and Hillhouse not having been served with said amendments, the bill, as amended, was not in a condition to be taken *pro confesso,* as to any defendants.

2d.  Because the order should be (inasmuch as the amendment was only as to parties, and not materially affecting the main gist of the action set forth and charged against defendants in the original bill, and as defendants had answered the original bill as aforesaid,) said order (if complainant could move at all, which defendants deny,) is not in such condition, either as to making, filing or serving thereof, as will enable the complainant to take the bill as amended *pro confesso,* as to Regan or any of the defendants; which objections the Court over-ruled, and granted the order asked for by complainant, taking the bill *pro confesso,* as to all of the defendants except the representatives of Key and Hillhouse, deceased.    To which decision of the Court, the defendants, by their Counsel, excepted.

Complainants then moved for further time to serve the representatives of Key and Hillhouse, with the amendments to said bill.    The Court granted the motion and ordered service thereof, and that said parties should, on or before the 1st day

of the next term of the Court answer the amendments. To which decision of the Court, granting the order, defendants, by their Counsel, excepted. Defendants, by their Counsel,. moved to dismiss said bill, on the following grounds:

1st. That complainant had not used due diligence in the preparing and speeding said case and in setting the same down for trial—as more than four terms had elapsed since the filing of said bill, in which the Court had been held, and in which complainant could have taken steps to speed said case, and taken steps to set the same down for trial, and complainant had not, nor had said Court, set said case down for trial, within the time limited by Statute for that purpose.

2d. Because said bill has never been, since its having been filed as aforesaid, docketed and called in a legal and proper manner on the equity docket of said Court, the same having been docketed and called (if at all, which defendants deny,) in this manner, and in this manner only—"Daniel Hightower *vs.* Dozier Thornton *et al.* Bill for Discovery, Relief and Contribution."

3. Because all the interlocutory decrees and orders, taken by said complainants in said case, (if taken at all in said case, which defendants deny,) are ambiguous, uncertain and insufficient, as the case to which they refer, and as to the defendants to be bound thereby, said order being headed in this way and no other—"Daniel Hightower *vs.* Dozier Thornton *et al.* Bill," &c. and said orders will be no sufficient protection to these defendants, as to the facts of said cases therein recited. Which motion the Court over-ruled, and to which decision, defendants, by their Counsel, excepted.

And upon these several exceptions, error has been assigned.

Judge BENNING having been of Counsel in this case, did not. preside.

B. HILL and H. HOLT, for plaintiff in error.

DOUGHERTY, for defendant in error.

Thornton *et al. vs.* Hightower.

*By the Court.*—STARNES, J. delivering the opinion.

At May Term, 1852, an order was granted by the Superior Court of Muscogee County, in reference to amendments of the bill filed by the defendant in error, (the complainant in the Court below) against the plaintiffs in error. At November Term of said Court thereafter, but as late as the 22d day of December, to which time the Court had continued in session, the defendants to said bill moved the Court to set aside said order on various grounds.

[1.] These grounds were, in our opinion, rightly over-ruled. They were in the nature of technical objections, and came too late. If good at all, they should have been made at an earlier period. The Court commenced its session on the first Monday in November, and it was not until the 22d day of December thereafter, when the complainant was about moving in his case, that these objections were made to an order which had been taken at a previous term of the Court. The defendants were required, by that order, to appear and answer said amendments, on or before the first day of the next term of the Court, with the liberty, also, of pleading, or demurring, or of doing both. That was the time at which they should have presented these objections, if they desired to rely upon them—the time at which they were called upon to answer; when the complainant would have had the earliest notice of their objections; and if some or all of them had been sustained, would have had the whole term in which to shape his course accordingly. Any other practice would allow unfair advantages to be taken, and might be productive of improper delays.

[2.] The defendants then asked leave to demur, plead and answer to said amended bill, *instanter.* And they presented certain pleas to the effect: 1. That the matter contained in said amendments should have been presented in the shape and form of a supplemental bill. 2. That A. B. Ragan was improperly made a defendant by said amendments, and should have been a party complainant to said bill. 3. That there

were numerous stockholders of said bank, solvent and within the jurisdiction of the Court, of equal liability with those made defendants, who had not been made parties, and who were necessary parties.

The leave thus asked was refused by the Court; and properly refused, in our opinion. As the case then stood in Court, with the order of the last term in force, requiring the defendants to answer, plead or demur on the first day of the next term, with the fact before the Court, that neither plea, demurrer nor answer had been filed in pursuance of the order, and with no excuse rendered therefor, the parties appeared before the Court in default, if not in contempt; and they had no right to the indulgence or privilege which they craved. It would have been a very bad practice, indeed, which accorded it to them.

[3.] Touching one of these pleas, we desire to make a few observations which may possibly save trouble hereafter.

It was insisted that all the stockholders of said bank, solvent and within the jurisdiction of said Court, of equal liability with said defendants, per share, should have been made defendants to said bill; and that the cause could not proceed without them.

This is just one of the cases where, according to well settled rules, a complainant may proceed against a portion of many defendants of equal liability. Such is the doctrine held in 2 *Eq. C. Abr.* 166, and to the following effect: "Where the parties liable to the demand have been very numerous, the Court have, in like manner, permitted a bill to be filed against a few of them, to compel the payment of their aliquot shares, without bringing the others before it. Thus, where fifty persons join together to form a bank, and to procure an Act of Parliament to establish and settle it, and were at equal charges, and about two hundred and fifty subscribed to raise a fund, but the speculation turned out unfavorably, whereby a loss of about £6000 was sustained by the first proprietors, who thereupon exhibited their bill against sixteen of the two hundred and fifty subscribers, to compel them to bear their proportion of the loss; it

was moved that the bill should abate for want of parties, but over-ruled, for the plaintiffs only prayed that the defendants might bear their proportion of the loss, which would appear before the master as well as if all the two hundred and fifty subscribers were there, and so, it could be no predjudice to those defendants." See, also, to the same effect, 1 *Eq. C. Abr.* 73. *Do.* 165. 1 *Dan. Ch. Pr.* 365.

[4.] It appears, by this record, that no order was taken by the Court against these defendants, on the day in question, but on the ensuing day they appeared in Court, by their Counsel, and presented excuses for their default, by which they sought to purge themselves of the imputed contempt. And then they asked leave to plead, answer or demur to said amendments, and that the bill might not be taken *pro confesso* against them. These excuses were not deemed sufficient; the permission was refused, and the Court proceeded to require proof of service, in order that the bill might be taken *pro confesso* against all defendants served.

To ascertain whether or not this ruling of the Court was correct, let us look a little into the character of this proceeding, to take a bill *pro confesso.* The object of such proceeding, in a Court of Equity, is to place the complainant in a situation by which he shall not lose his remedy for want of the answer, for which he is dependent upon the conscience of the defendant. It may be said to be used by way of punishment for contempt; but it is not the peculiar punishment for such contempt —attachment and committal to prison is that remedy. But even these have direct reference to the extraction or obtaining of an answer, as that which is the thing needful to the justice of the case. Accordingly, where the accurate and regular forms of Chancery practice are pursued, such as were of force in England at the time of our Adopting Statute, the defendant who appears and refuses to answer is first committed for the contempt; and if he persists in refusing, his property, real and personal, may be sequestrated. In the meantime, he will be brought to the bar and admonished of the peril of persevering,

and if he still refuse to answer, the bill will be taken *as confessed* against him. (1 *Harr. Ch. Pr.* 203. 2 *Ch. Ca.* 237.)

Under the rules, as they now stand in England, they having been amended during the reign of *William IV.* the recusant defendant must be first committed for the contempt, to the Fleet prison; he may then be brought to the bar by *habeas corpus;* and if he still persists in his refusal, the Court will then make an order that the bill be taken *pro confesso.* But even after this, the Court may receive the answer. It will not, as matter of course, be a sufficient ground for setting the order aside; " yet, wherever an order of this kind has been made, and the defendant comes in upon any reasonable ground of indulgence, and pays the costs, the Court will attend to his application, unless the delay has been extravagantly long." (*Williams vs. Thompson,* 2 *Brow. C. C.* 280. 1 *Dan. Ch. P.* 695.)

We have dwelt on all this, for the purpose of showing that the great point to be gained, where a defendant refuses to answer, is *the answer;* that the efforts of the Court are mainly addressed to this point; that other punishment than that of taking the bill *as confessed,* will first be resorted to, and that even after the order taking the bill *pro confesso* is entered, the defendant will be allowed to file his answer, upon any reasonable ground of indulgence. Now we can spare but few words in order to apply these principles to the case at bar, nor can many words be needed.

We will only add, that under the circumstances of this case, taking into consideration the fact that the Court had not deemed the contumacy of the defendants sufficient to authorize an attachment for contempt, and taking into consideration the excuses which were tendered by the Counsel for the defendants, especially the illness of the leading Counsel, Col. Holt, we think that the Court should have considered this showing as a " reasonable ground of indulgence," so far as to let the answer come in upon it. Still, might the Chancellor have visited an inconvenience or penalty upon the defendants for not having answered. Already had they been rightly refused the privi-

lege of demurring or pleading to the amendments; and the Chancellor could, and perhaps should, have admitted the answer upon terms; for we are told that when the order is discharged for taking the bill *pro confesso*, the Court will "require to see the answer proposed to be put in, in order that it may form a judgment as to the propriety of it, and will not put the plaintiff to the peril of just such an answer as the defendant shall think proper to give." (*Hearne vs. Ogilvie*, (11 *Ves.* 77.) In this way, too, the Chancellor could have prevented delay, and have secured to the complainant all the rights of which he would have been possessed, had the answer been filed in time.

Such would have been the subtantial justice of this case, in our opinion, and such should have been the direction given to it.

This disposition of the case renders it unneccessary for us to consider the question made upon service, on various defendants, as preliminary to the order which was granted, taking the bill *pro confesso* against them.

Judgment reversed.